1

1                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF KENTUCKY
2                         CENTRAL DIVISION AT LEXINGTON

3
                                     - - -
4    UNITED STATES OF AMERICA,        .   Case No. 5:21-CR-00065
                                      .
5              Plaintiff,             .
                                      .   Lexington, Kentucky
6         - v -                       .
                                      .   Friday, May 27, 2022
7    CHRISTOPHER A. MAREK,            .   1:00 p.m.
                                      .
8              Defendant.             .
                                     - - -
9
                    TRANSCRIPT OF SENTENCING PROCEEDINGS
10               BEFORE THE HONORABLE DANNY C. REEVES
                  UNITED STATES DISTRICT COURT JUDGE
11
                                     - - -
12

13   For the United States:      WILLIAM P. MOYNAHAN, ESQ.
                                 Assistant U.S. Attorney
14                               United States Attorney's Office
                                 260 West Vine Street, Suite 300
15                               Lexington, Kentucky  40507

16   For the Defendant:          ROBERT C. WEBB, ESQ.
                                 Frost Brown Todd, LLC
17                               400 West Market Street, Suite 3200
                                 Louisville, Kentucky  40202
18
     Court Reporter:             LINDA S. MULLEN, RDR, CRR
19                               Official Court Reporter
                                 101 Barr Street
20                               Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25

1   (Proceedings in open court, May 27, 2022, 1:00 p.m.)

2        THE COURT:  Madam Clerk, would you call the matter

3   scheduled for 1:00, please.

4        THE CLERK:  Yes, Your Honor.  Lexington Criminal Action

5   Number 21-65, United States of America versus Christopher A.

6   Marek, called for sentencing.

7        THE COURT:  Thank you.

8        Would counsel state their appearances, please.

9        Mr. Moynahan, good afternoon.

10       MR. MOYNAHAN:  Good afternoon, Your Honor.  Will Moynahan

11   for the United States.

12       THE COURT:  Thank you.

13       MR. WEBB:  Good afternoon, Judge.  It's Bob Webb for

14   Dr. Marek.

15       THE COURT:  This is the defendant at counsel table.  Thank

16   you.

17       This matter is scheduled for a sentencing hearing this

18   afternoon.  Before we proceed with the hearing, let me first

19   confirm that Mr. Marek has had the opportunity to review his

20   presentence report and also to discuss the report with his

21   attorney to his satisfaction; is that correct?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  Your presentence report will be filed in the

24   record under seal pursuant to the Federal Rules of Criminal

25   Procedure.  It's available if the parties should need the

1    report for any reason.  It's not available for the general

2    public to review.

3         There are no objections to the presentence report.  I will

4    adopt the findings that are contained in the report as well as

5    the guideline calculations, which I will review with the

6    parties in just a moment.

7         Before I do that, let me remind counsel that if there are

8    any additional factors that you would like to call to my

9    attention that are relevant to sentencing under Title 18,

10   Section 3553, of course please do so during allocution in the

11   case.

12        I'll also note for the record, I have received the motion

13   for a variance and supporting memorandum filed on behalf of the

14   defendant, as well as the sentencing memorandum filed on behalf

15   of the defendant, and a number of letters, I think 30 in total,

16   from various individuals.

17        The information contained in the memos, the motion and the

18   letters will be taken into account in determining an

19   appropriate sentence in the case.

20        Let me turn to the presentence report at this time, go

21   through the guideline calculations with the parties.

22        The offense level calculations begin at paragraph 16 of

23   the presentence report.  The 2021 edition of the guidelines

24   manual has been used to perform these calculations.

25        The base offense level is determined according to the tax

1   loss in this case, with a loss in the amount of $283,687, that

2   results in a base offense level of 18.

3       There is a three-level reduction shown for acceptance of

4   responsibility.  Before the Court may apply the third level of

5   acceptance credit under section 3E1.1(b), it does require a

6   motion from the United States.

7       Mr. Moynahan.

8       MR. MOYNAHAN:  Your Honor, the United States would move

9   for that one-point reduction, additional reduction, under

10  3E1.1.

11      THE COURT:  All right.  Thank you.  That motion will be

12  sustained.  That has the effect of reducing the total offense

13  level to a level of 15.

14      The defendant does not have any criminal history points as

15  reflected in part B of the report; therefore, he's placed in

16  Criminal History Category I for purposes of calculating the

17  nonbinding guideline range in this case.

18      There is also information contained in the report

19  beginning at paragraph 44 with the defendant's financial

20  condition and the ability to pay restitution and a potential

21  fine in the case.

22      I will ask the parties to address the potential fine under

23  the factors listed in 5E1.2(d) during allocution in this case.

24      The guideline range based upon a total offense level of 15

25  and a Criminal History Category I for any term of incarceration

1    as set forth in paragraph 47 is a range of 18 to 24 months.

2         The fine range in the case under the guidelines, the

3    bottom of the fine range would be $7,500, and the statute would

4    provide a maximum fine of two times the amount of loss for a

5    total of $567,374.  The fine range is set forth in paragraph 64

6    of the report.

7         Again, I have adopted the findings contained in the report

8    as well as the guideline calculations that I have just reviewed

9    with the parties.

10        At this time we'll proceed with -- well, first, let's take

11   up additional counts.

12        Mr. Moynahan.

13        MR. MOYNAHAN:  Your Honor, at this time, pursuant to the

14   plea agreement, the United States will move to dismiss Counts 1

15   through 4 and 6 through 10 of the indictment.

16        THE COURT:  All right.  That motion will be sustained.

17   All counts other than the count of conviction, which will be

18   Count 5, would be dismissed effective upon entry of the

19   judgment in this matter.

20        We will then proceed with allocution.

21        Mr. Webb, I'll hear you from first.  Dr. Marek, if you

22   would like to make a statement to the Court after your attorney

23   has finished his remarks, you may.

24        MR. WEBB:  Judge would you like me to stand or sit?

25        THE COURT:  Yes, sir.  Stand, please.

1      MR. WEBB:  Stand?

2      THE COURT:  Yes, sir.

3      MR. WEBB:  Judge, I'm not going to repeat what we stated

4  in our variance motion, I'm sure Your Honor has read it

5  carefully.  But as the 30 letters state, Dr. Marek has spent

6  over 20 years helping very seriously injured people, you know,

7  with their problems.  And I think the letters do a good job of

8  describing that.

9      He serves a very rural community where, without his

10  presence, a lot of people wouldn't have the necessary medical

11  care that they really need without substantial travel to either

12  Louisville or Lexington.

13      And this is the first problem or the first run-in that

14  Dr. Marek has ever had with any federal or state authorities.

15  So he has -- you know, he's been an exemplary doctor.  He's

16  never had any medical board issues, so this is his first real

17  problem that's come up.

18      And as we stated in the variance motion, he is selling his

19  home.  He's listed it and he's selling his home to be able to

20  pay the taxes that are due and owing.  So that's in the process

21  of being sold.

22      He admits that he was wrong for not seeking out proper

23  legal advice, you know, to advise him with respect to his

24  taxes.  And he accepts responsibility for that, Your Honor.

25      So we would ask for a sentence that would allow Dr. Marek

1  to continue to serve his community.

2      THE COURT:  All right.

3      I think there's -- rather than 30, I think there are

4  40 letters that were submitted.

5      MR. WEBB:  40 letters, yes, Your Honor.

6      THE COURT:  Yes, sir.  You made reference to serving a

7  rural community, I never really thought of Danville as a rural

8  community as much.  I guess if you're raised in Oak Grove,

9  Kentucky, Danville looks like a pretty big city to some of us.

10     Thank you, Mr. Webb.

11     MR. WEBB:  Thank you, Judge.

12     THE COURT:  Dr. Marek.

13     THE DEFENDANT:  Thank you, Your Honor.  I would like to

14  express my sincere remorse for the mistakes I made in filing my

15  taxes the way I did.  You know, I only based those filings on

16  my own understanding only.  I didn't seek out professional tax

17  advice.

18     I only have myself to blame for, you know, my interest in;

19  studying and reading of the tax laws and the Supreme Court

20  rulings that kind of led to these misunderstandings that I had

21  about what was taxable income.

22     You know, facing, you know, months in prison and the

23  potential of losing my ability to care for patients that I've

24  worked, you know, 28 years or more to get weighs heavy on me.

25     I realize that I've made and recognize the errors that

1   I've made in my judgment.  I hope to make things right.  Like

2   Mr. Webb said, I'm trying to sell my home and my practice and

3   anything else that I can do to try to make the government

4   whole.

5        If I'm able to continue to practice, I have potential job

6   offers that would allow me to continue to serve the community

7   while not having the responsibility of running and managing a

8   practice.  I receive a paycheck that taxes are withheld from,

9   and certainly plan to utilize the CPA going forward for any of

10  the accounting or tax preparation and not relying on my

11  understanding of the laws.

12       During this past year, year and a half, I've lost my

13  family, my marriage, my relationship with my son, and my office

14  staff, and potentially my future ability to care for patients

15  and to do what I do to earn a living.

16       Since I pled guilty, I haven't been able to receive

17  payments from Medicare, several other insurance companies for

18  the felony conviction.  But you know, I still continue to see

19  those patients and care for those patients at no charge because

20  that's what I do.  That's what I do.

21       I would like to thank everybody, the community and

22  everybody for being so kind and supportive of me.  I'm just

23  trusting God for whatever he has planned in my future, and I

24  just ask for your understanding and compassion and mercy with

25  your sentencing.  Thank you.

1      THE COURT:  Thank you.

2      Mr. Moynahan.

3      MR. MOYNAHAN:  Thank you, Your Honor.

4      The United States made its position fairly clear in our

5   sentencing memo, but I do want to touch on a few factors of the

6   3553 factors.

7      Your Honor, this is a serious offense.  It wasn't a

8   deduction that shouldn't have been taken that was, it wasn't

9   leaving out a small amount of income.  This was not reporting

10  hundreds of thousands of dollars in income from patients and

11  insurance companies.  And not just one year, Your Honor, but

12  over a period of years.  It was done repeatedly, when he had

13  the chance on each year as he's filing his 1040, to correct

14  that mistake or to correct that clerical, I should say.

15     Your Honor, there is a definite need to promote respect

16  for the law.  Dr. Marek is clearly an educated person,

17  prosperous plastic surgeon.  He has plenty of resources and had

18  access to both tax and legal professionals.  I believe two

19  attorneys even sent letters on his behalf.  All of these

20  individuals were people that could have, and frankly did,

21  according to the pleadings, provide him with advice that he

22  rejected regarding his taxes.

23     And the United States, Your Honor, it's very clear, if you

24  earn income, you have to report that income and are subject to

25  taxation on it.  This isn't a new or changed rule or something

1    that's changed.  It's been a long-standing provision.

2         Dr. Marek's actions really indicate that he was, as I said

3    in the memo, in open revolt against the IRS for a number of

4    years.  And it deserves a significant punishment to enforce the

5    respect for the law that this action requires.

6         Lastly, to afford adequate deterrence is a big factor

7    here, Your Honor, not just because in specific deterrence with

8    respect to Dr. Marek, but with respect to general deterrence to

9    the population.  Obviously, the IRS doesn't audit every

10   business.  People that own their own businesses have the

11   responsibility to report their income accurately.  And if there

12   is no significant sanction for that, then there's little reason

13   for people in some instances to do so.

14        So in that case, Your Honor, that requires a significant

15   sanction.  Because if the sanction is just simply later on down

16   the line you have to pay the taxes plus a penalty, the United

17   States would argue that's an insufficient sanction.

18        Turning to the letters, certainly the United States read

19   through all of them.  It's clear in the case that Dr. Marek's

20   performance as a doctor was never in question here.  He clearly

21   is a fine plastic surgeon who has helped many patients.  But

22   our laws don't give a free pass to someone who has special

23   skills and provides those skills to the community.

24        All of that is taken into account, but we still, for all

25   of other reasons I've just discussed, need to have a

1    significant sanction here.  Undoubtedly, Dr. Marek has years

2    ahead for him to practice medicine, and the sanction for -- the

3    maximum sanction, of course, for tax evasion is five years.

4    The United States is not asking anywhere for near five years as

5    a penalty for incarceration for Dr. Marek.

6        Additionally, as I looked through the letters, I was once

7    again struck by just the number of people who he similarly had

8    at his access to be able to reach out to consult about his

9    taxes and either just refused or refused their advice, refused

10   to accept it.  Frankly, Your Honor, that represents a level of

11   arrogance about what his understanding or what his position

12   against the IRS was in the face of all other known information.

13       I did have a chance to look through the defense memo about

14   comparable sentences, which I found of course interesting and

15   relevant.

16       I just would note that of the five, I believe, or six --

17   five cases that were cited with a probationary sentence as a

18   result, in all of those cases, they differ from this case in

19   the sense that the defendant entered into an information as

20   opposed to waiting for an indictment.  Dr. Marek had that

21   choice in this case but did not pursue it.

22       And also, at least in a few cases I believe, the amounts

23   were inclusive of penalties and interest, not just the tax loss

24   amount.

25       But clearly, what's relevant here is that tax cases vary

1    from case to case.  So it's difficult to say that in any

2    particular case, a certain level of penalty is appropriate.

3    That's why we look at each case specifically and the facts of

4    those cases.

5        So, Your Honor, without saying anything further, the

6    United States will support an incarceration penalty of

7    21 months, the middle of the guidelines range.

8        THE COURT:  All right.

9        MR. MOYNAHAN:  Thank you.

10       THE COURT:  All right.  Thank you.

11       Dr. Marek, at the time you entered a guilty plea in the

12   case, I reviewed with you some of the factors that would be

13   taken into account in determining what would be an appropriate

14   punishment for the acknowledged crimes of failing to pay taxes

15   in this particular case.

16       We talked about the nonbinding sentencing guidelines,

17   generally how the guidelines are calculated, and also some

18   other factors, statutory factors, that are listed in Title 18,

19   Section 3553.  All of that information is considered.

20       All of the letters that have been submitted and all of the

21   information in the sentencing memos are distilled through those

22   factors, and that's information that is taken into account.

23       The United States has pointed out a number of what it

24   considers to be aggravating factors, and of course your

25   attorney and you have pointed out mitigating factors.  And

1    there are several in this particular case.

2        Ultimately, my job is to determine what is a sentence that

3    would be sufficient but not greater than necessary to meet a

4    number of those statutory factors that we talked about

5    previously.

6        So I want to take just a moment and I want to go through

7    some of the arguments in the context of these factors.

8        So let's first look at the guidelines.  The guideline

9    range in this particular case as set forth in the presentence

10   report is a range of 18 to 24 months.  That's driven in large

11   part by loss amount.  It's also calculated according to

12   criminal history.  And in this case, you don't have any

13   criminal history.

14       That's important for two reasons.  Criminal history is

15   used to determine a guideline range.  The more points that a

16   person has, criminal history points, the greater the guideline

17   range becomes.  You go from Criminal History Category I all the

18   way up to VI on the chart.  Of course, from I to VI, you have

19   an increased range of penalties.

20       If a person has criminal history, criminal history is not

21   only important in determining that number, but the nature of

22   criminal history is important, because it's a reflection of

23   recidivism.  It's a reflection of what a person may likely do

24   when the person is released if there is any term of

25   incarceration that's imposed.

1    We do know from a number of studies and publications that

2    criminal history is probably the largest driver, most important

3    factor in determining recidivism, which is defined as being

4    arrested, committing a violation of supervision or committing

5    another offense.

6    So the fact that you don't have any criminal history

7    certainly is important, not only in calculating that score, but

8    in looking at this issue of recidivism.

9    We also know from some of these same studies that age is

10   an important factor.  The older a person becomes, the less

11   likely they are to commit offenses.  Conversely, the younger a

12   person is, there is a greater chance of committing offenses or

13   being a recidivist.

14   Why is that important?  It's important because of factors

15   that we talked about, those 3553 factors of deterrence and

16   protecting the public.

17   In this case, it's clear that you're not a danger to the

18   public.  You're a benefit to the public in the services that

19   you provided over the years, so there's not a question here of

20   danger to the public.

21   It's a question, really, of likelihood of reoffending.

22   And it does appear that you have taken steps to prevent that

23   from happening.

24   Counsel refers to an arrogant approach, maybe that's true,

25   but maybe that's part of a person's history and

1    characteristics.  But if it is true, I think you've learned a

2    pretty important lesson about listening to others with regard

3    to tax issues or tax advice.

4          So on balance, I do think that your history and your

5    characteristics are positive.

6          When you look at those factors of 3553, they can really be

7    grouped into a couple of headings.

8          There's the issue of rehabilitation.  That's not really an

9    issue for you in terms of needing additional education,

10    vocational training, things of that nature.  Medical issues,

11    not a real serious concern that you have, no substance abuse

12    issues.  So rehabilitation is not necessarily the issue in this

13    case.

14          Then we look at deterrence and protecting the public,

15    those really go hand in hand for the most part.

16          But then there is also the issue of punishment.  That's an

17    important part of sentencing.  And many times, and I certainly

18    understand that a person sitting on this side of the room at

19    this table doesn't really focus as much on punishment as the

20    one on this side of the room would be focused generally more on

21    issues of rehabilitation.

22          But punishment is an important factor.  And I'm going to

23    talk about the sentencing memo and some of the arguments in

24    just a moment.

25          But if we're only looking at an issue, in your case your

1    attorney's arguing for a term of probation, the United States

2    is arguing more for a sentence in the middle of the guideline

3    range.

4        If I go completely with the argument that your attorney

5    has made, what is the deterrent effect that that would have if

6    there is a period of probation and the person's only required

7    to repay what should have been paid originally?  Doesn't create

8    any deterrence.  There is zero deterrent effect because how

9    many people would now not pay their taxes with the idea that,

10   if they get caught, they will just repay their taxes?

11       Now, of course, there's also this collateral consequence

12   of a felony conviction.  But that's not the sentence, that's a

13   result of the plea that's been entered in the case.  It's not

14   the sentence itself that results in those collateral

15   consequences.

16       So in this case, I am considering not only a term of

17   probation, but I am also considering a significant fine.  My

18   consideration includes the fact that if I impose a term of

19   incarceration in your case, it does not benefit the public as

20   reflected in many of these letters that have been submitted.

21   It also affects your ability to pay restitution, and it affects

22   your ability to repay any fine that might be imposed in the

23   case.

24       I do want to stop for just a moment, and I do want to make

25   a comment about just a couple of points that you had made in

1   your comments to the Court about your family circumstances.

2       I'm certainly hopeful that you can rebuild whatever

3   problems that you've had with your son because I know your son

4   is really important to you.  And I'm sure he sees you as a very

5   good doctor in the community who has made a mistake on taxes.

6   But that shouldn't define who you are with him.  And I'm sure

7   with some work you'll be able to put those things back

8   together, and I certainly hope so.

9       THE DEFENDANT:  Thank you.

10      THE COURT:  With regard to the sentencing memo, let me

11  talk about this for just a moment.

12      The points that the United States makes are very important

13  when it comes to this one factor of sentencing, which is

14  Section 3553(a)(6), that's the need to avoid unwarranted

15  sentencing disparities among defendants that are similarly

16  situated who have been found guilty of similar conduct.

17      That seems to run counter with the idea that sentencing is

18  individual.  Because when we start throwing these statistics

19  out about the number of white collar cases that receive a

20  variance downward, that really does not get to those individual

21  factors in those cases.

22      To me, it does not matter whether you entered a guilty

23  plea to an indictment or to an information.  That's a

24  discussion that you've had and made a decision about that.

25      To me, it doesn't matter if you proceed to trial.  You

1    certainly do get acceptance of responsibility credit if you

2    don't and if you acknowledge responsibility, but that's a

3    decision that you make with your attorney.  So you're not

4    penalized for those decisions in my eyes.

5         But when we look at what other courts do in these cases,

6    whether it be a tax case or some other type of case that's

7    characterized as white collar conduct, I don't really draw

8    distinctions between if you're wearing a white collar or blue

9    collar.  An offense is an offense.  And I don't give credit to

10   doctors because they are doctors.  I do look at a person's

11   history and characteristics.  In your case, as I said earlier,

12   they are very positive.

13        But the fact that this is a tax case, I handle a lot of

14   tax cases.  And I've had some cases with plastic surgeons, as a

15   matter of fact.

16        The sentence that I'm going to impose in the case is not

17   because of the arguments that are made.  While I appreciate the

18   arguments, it's not because of the arguments made under this

19   section of the guidelines, 3553(a)(6).  But I do consider these

20   other factors to be very important that I've talked about.

21        So for those reasons, and when I look at issues of

22   deterrence, the question that comes to my mind is, what would

23   be necessary to provide general deterrence?  Because I think

24   specific deterrence can be served fairly easily in this case.

25   But what would be sufficient general deterrence?

1        I do look at and consider the time period here, the amount

2   that's involved.  And considering all of those matters, it's my

3   determination that a fine of $75,000 is necessary to provide

4   general deterrence.

5        Now, how do I get to that number?  Well, there is a

6   section of the guidelines, I mentioned it earlier, 5E1.2.  The

7   first part of this section, subsection (a) indicates, "The

8   court shall impose a fine in all cases, except where the

9   defendant establishes that he is unable to pay and is not

10  likely to become able to pay any fine."

11       So that's the first part of this guideline section.

12  Guidelines aren't binding.  This section is not binding, but it

13  does give the Court some general parameters to follow.

14       And then it lists a number of factors to be taken into

15  account in determining the amount of the fine, if a fine is

16  appropriate.

17       There are some cases in which individuals either can't pay

18  a fine, will not be able to pay a fine, or to impose a fine

19  would create an undue hardship on the person or their families.

20       The amount of the fine that I mentioned earlier, I don't

21  think, would violate those restrictions, so to speak.

22       But the factors that are considered are some of the

23  factors that are taken from 3553, the need for the combined

24  sentence to reflect the seriousness of the offense, including

25  harm or loss to the victim and gain to the defendant, promote

1    respect for the law, to provide just punishment, and afford

2    adequate deterrence.   Those are the factors listed in 3553.

3        Also in the evidence presented as to the defendant's

4    ability to pay a fine, including the ability to pay a fine over

5    time, in light of earning capacity and financial resources.

6        I'm not going into a lot of discussion about resources, I

7    do know that you're attempting to sell a residence right now.

8    It does appear to be a fine residence.   And I certainly am

9    hopeful that you'll get a fair price for it, if you are able to

10   sell it.

11       Again, the Court considers the burden that it would place

12   on you or your dependents, any restitution or reparation that

13   you are obligated to make.   In this case, we do have a

14   significant amount of restitution.

15       Collateral consequences.   It would appear based upon the

16   letters that, from a professional standpoint, there would not

17   be significant collateral consequences, although I do

18   understand what you had stated earlier about your ability to

19   bill federal programs for the services that you provide.

20       Whether you've been fined previously and the expected cost

21   to the government.

22       In addition to restitution, if I were to do something

23   other than probation, of course that would be an additional

24   increased cost to the government and that would diminish the

25   ability to recover restitution and the fine in this particular

1  case.

2      After these eight factors are listed, including this last

3  one, pertinent equitable considerations, this section indicates

4  that the amount of the fine should always be sufficient to

5  ensure that the fine, taken together with other sanctions

6  imposed, is punitive.  So it gets back to that factor that

7  there is punishment for an offense.

8      So that's my analysis, my determination as to how I get to

9  that $75,000 number in terms of a fine.

10     While the top of the fine range in this particular case by

11 statute is two times the amount of the loss, when we look at

12 the fine table in the guidelines, it would go from 7,500, it's

13 ten times higher than that for the top, or 75,000, I feel like

14 that's sufficiently punitive in this particular case, and it's

15 in terms of general deterrence for others.

16     In other words, I think another person similarly situated,

17 if they understood that while they may receive a sentence of

18 probation, they would also have a significant fine to pay in

19 addition to restitution, that would meet the goal of being

20 sufficient but not greater than necessary to meet all of those

21 factors that have been listed.

22     Now, there are a couple of other points I do want to

23 review with you before I announce the sentence.  These are

24 those what-if factors.  What if I violate, what if I decide I'm

25 just not going to pay restitution or don't pay the amount that

1    I should.

2        Title 18, Section 3614, resentencing upon failure to pay a

3    fine or restitution is the heading.

4        Subparagraph (a) states that "Subject to the provisions of

5    subsection (b), if a defendant knowingly fails to pay a

6    delinquent fine or restitution, the court may resentence the

7    defendant to any sentence that might originally have been

8    imposed."

9        Subsection (b) lists some guidelines.  On imprisonment, it

10   says "The defendant may be sentenced to a term of imprisonment

11   under subsection (a) only if the court determines that the

12   defendant willfully refused to pay the delinquent fine or had

13   failed to make sufficient bona fide efforts to pay the fine; or

14   in light of the nature of the offense and the characteristics

15   of the person, alternatives to imprisonment are not adequate to

16   serve the purposes of punishment and deterrence."

17       Now, a person can't be resentenced by failing to pay a

18   fine or restitution under this section if the person is

19   indigent.

20       But that is an option that the Court has.  And that's for

21   just simply not paying the fine under those circumstances

22   outlined.

23       But there is another section of Title 18, it's 3565,

24   Revocation of probation.  "If the defendant violates a

25   condition of probation at any time prior to the expiration or

1    termination of the term of probation, the court may, after a

2    hearing pursuant to Rule 32.1 of the Federal Rules of Criminal

3    Procedure, and after considering the factors set forth in

4    section 3553(a), to the extent that they are applicable," the

5    Court may "continue" the person "on probation, with or without

6    extending the term or modifying or enlarging the conditions; or

7    (2), revoke the sentence of probation and resentence the

8    defendant under subchapter A."

9        So the point is, when a person is on probation, if there

10   is a violation of conditions of supervision, that can result in

11   a resentencing.

12       And if a person does not make fine or restitution payments

13   under those provisions that I've just read from Section 3614,

14   that can also give rise to a resentencing hearing.

15       Now, I tell you that certainly not as a threat, but just

16   so you'll know consequences if there were to be a violation.

17       I certainly do believe that you will make every sincere

18   effort that you can to pay the amount of restitution and get

19   this issue behind you as quickly as you can.  I know there are

20   collateral consequences.

21       But it does appear that you are certainly a fine plastic

22   surgeon that has provided excellent services to what your

23   attorney refers to as a rural community, and I think it would

24   be sufficient to impose a period of probation in this case with

25   the fine amount that I have indicated.  That's the basis for my

1   determination in this case.

2          So let me announce the sentence.

3          It will be the sentence of the Court pursuant to the

4   Sentencing Reform Act of 1984, as modified by the decisions in

5   *Booker* and *Fanfan*, and I do believe that this sentence will be

6   sufficient and not greater than necessary to meet all of the

7   purposes of Title 18, Section 3553(a):

8          Therefore, it's the judgment of the Court that the

9   defendant, Christopher A. Marek, will be placed on probation

10   for a term of four years.

11          While on probation, he may not commit another federal,

12   state or local crime.  And he must comply with the mandatory

13   and the standard conditions that have been adopted by the Court

14   and that will be set forth in the judgment and commitment

15   order.

16          The drug testing condition that is ordinarily required by

17   Title 18 of the United States Code, Section 3553(a)(5) and

18   3563(a)(5) will be suspended based upon my determination that

19   Mr. Marek poses a low risk of any substance abuse, likelihood

20   of substance abuse in the future.

21          The following special conditions will also be included:

22          Mr. Marek may not incur any new credit charges or open

23   additional lines of credit without the approval of the

24   probation office unless he is in compliance with an installment

25   payment schedule, which I'll discuss in more detail in just a

1   moment.

2         He'll also be required to provide the probation office

3   with access to any requested financial information.

4         He'll be required to report to the IRS and file true and

5   accurate returns for the period of 2014 through 2018 tax years,

6   within 90 days, and thereafter abide by any tax repayment

7   schedule established by the Internal Revenue Service.

8         I am going to impose a fine as I've indicated in just a

9   moment.  But what I want to happen is I want this tax repayment

10  schedule to be established within the next 90 days.  And then

11  at that point, after that 90-day period, I'll be able to set a

12  schedule for repayment of the fine, but I want to look at the

13  repayment schedule first to determine how onerous that's going

14  to be in light of the other financial information in the report

15  before I establish that schedule for payment of the fine in the

16  case.

17        Quite frankly, I'm more interested in repayment to the

18  Internal Revenue Service of that amount of restitution, so that

19  takes priority over the fine in the case.

20        Mr. Marek must also cooperate with the Internal Revenue

21  Service in rectifying tax liability, including that tax

22  repayment schedule that I have just referenced.

23        And he must timely file his federal income tax returns

24  during the term of probation that has been announced.

25        Now, restitution in the amount of $283,687 will be due

1    immediately to the Internal Revenue Service, but of course it's

2    subject to the tax repayment schedule that I have just made

3    reference to.

4        And then after that repayment schedule has been

5    established, a fine will be imposed in the amount of $75,000.

6    I'm not going to direct that interest be paid on the fine

7    amount, so interest will be waived on that amount of the fine.

8        There will also be the special assessment of $100, that

9    will be due immediately.

10       The judgment will indicate that the fine amount will be

11   due immediately, but in the event that it can't be paid

12   immediately, as indicated, I will establish that installment

13   payment schedule.  It will be 90 days.  It will be set shortly

14   after that 90-day period has expired so I can see exactly what

15   the repayment is to the Internal Revenue Service.

16       And that will be the judgment to be entered in this case.

17       Let's see, let me take just a moment, I want to look at

18   the plea agreement.

19       In this case, Mr. Marek waived the right to appeal the

20   guilty plea, conviction and the sentence.

21       However, I do want to advise the parties that in the event

22   that either party believes that this Court has committed any

23   error that would not be subject to the waiver and would be

24   subject to appeal, that any notice of appeal would have to be

25   filed within 14 days from the date that the judgment is entered

1    in the case.

2        Also, although Mr. Marek has retained counsel in the

3    matter, if for some reason he were unable to be able to pay for

4    an appeal and believe there were issues subject to appeal and

5    could not retain counsel or pay the cost of an appeal, he could

6    seek to appeal in forma pauperis, which means he could seek to

7    appeal without payment of cost and can seek to have counsel

8    appointed to represent him in connection with an appeal.

9    However, in order to proceed in forma pauperis, it would be

10   necessary to file an appropriate affidavit to establish

11   indigency in the case.

12       Now, at this time I'll ask the attorneys to state any

13   objections that they may have, first to the judgment that has

14   been announced.  That would include conditions of supervision.

15       Second would be any objections under *United States versus*

16   *Bostic*.  Under that decision from the Sixth Circuit, any

17   objections not previously raised should be raised at this time

18   so that they may be addressed by the Court to be properly

19   preserved for review on appeal.

20       And then finally, if either counsel for the United States

21   or the defendant would like the Court to make additional

22   findings to support any of the determinations that have been

23   announced, I'll certainly do so, make those findings, if

24   requested.

25       Mr. Moynahan, I'll begin with you.  And if you would like,

1    I'll note for the record your objection to the Court's variance

2    below the guideline range for the reasons that you've

3    previously argued.

4         MR. MOYNAHAN:   Yes, Your Honor.   Other than that

5    objection, there is no additional objections from the United

6    States.

7         THE COURT:   No request for findings, additional findings,

8    Mr. Moynahan?

9         MR. MOYNAHAN:   No request for findings, sir.

10        THE COURT:   Thank you.   Mr. Webb?

11        MR. WEBB:   Your Honor, I have no objections.   I do have

12   one concern that I would like to raise with the Court.

13        THE COURT:   Yes, sir.

14        MR. WEBB:   The Internal Revenue Service, since COVID, has

15   moved so slowly on civil things it's hard to get things done

16   with them.   So I'm not positive that we'll -- even if we try as

17   hard as we can, I'm not sure the IRS will be able to process

18   the payment schedule within the 90-day period, so I want to

19   give the Court heads up.   We'll do our best.

20        THE COURT:   Let me tell you what I'll do.   If you would

21   file a notice in the record -- if you're not able to get that

22   schedule established within 90 days, you can file something to

23   that effect in the record.   I will go ahead at that point, if

24   there's not something that's been finalized with the IRS, I'll

25   go ahead and establish an installment payment schedule for the

1   fine.  And of course that's subject to being modified.

2        So if it's later accomplished with the IRS and if I need

3   to modify the schedule on the fine, I am able to do that.  But

4   I don't want to delay that much beyond that 90-day period.

5        Of course, I'll be asking the probation officer to keep me

6   advised of any information that could affect the ability to pay

7   the fine that would include sale of real estate or other

8   matters.  So I'll ask the probation officer to provide me with

9   an update in that regard.

10       Will that clarify that issue, Mr. Webb?

11       MR. WEBB:  Yes, Your Honor.  Thank you.

12       THE COURT:  All right.  Let me see if we have any other

13  issues to take up in the case at this time.  Mr. Moynahan?

14       MR. MOYNAHAN:  Nothing from the United States, Your Honor.

15       THE COURT:  Mr. Webb?

16       MR. WEBB:  No, sir, Your Honor.

17       THE COURT:  Good luck.

18       THE DEFENDANT:  Thank you.

19       THE COURT:  We will be in recess until 2:00 p.m. this

20  afternoon.

21       (Proceedings concluded at 1:42 p.m.)

22                      C E R T I F I C A T E
              I, Linda S. Mullen, RDR, CRR, do hereby certify that
23  the foregoing is a correct transcript from the record of
    proceedings in this above-entitled matter.
24  /s/Linda S. Mullen          July 11, 2022
    Linda S. Mullen, RDR, CRR    Date of Certification
25  Official Court Reporter